IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Civil Action No. 1:25-cv-01558-RMR

CARLOS MANZANAREZ MENDOZA,

    Petitioner,

v.

MARK BOWEN, Acting Warden,
Aurora ICE Processing Center, and
ROBERT GUADIAN, Field Office Director,
United States Immigration & Customs Enforcement,
Denver, Colorado,

    Respondents.

## ORDER

Pending before the Court is Petitioner's Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Application"). ECF No. 1. Respondents have filed a response, ECF No. 7, and Petitioner has replied, ECF No. 11. After the matter was fully briefed, Petitioner filed a Motion for Preliminary Injunction, "requesting his temporary release from immigration detention pending the final outcome of his habeas petition." ECF No. 12 at 6. Respondents have not had the opportunity to respond; however, per D.C.COLO.LCivR 7.1(d), the Court may rule on a motion at any time after it is filed without waiting for a Response. The Court has reviewed the Application, the Motion for Preliminary Injunction, the related briefing, and the applicable case law. No party has requested a hearing on the matter, and the Court finds that oral argument would not

materially assist in the resolution of these matters. For the reasons stated below, the Application, ECF No. 1, and the Motion for a Preliminary Injunction, ECF No. 12, are DENIED.

I. BACKGROUND

The following facts are taken from Petitioner's Application, ECF No. 1, Respondents' Response, ECF No. 7, and the attached exhibits, ECF Nos. 1-1 and 7-1. Unless controverted, the Court assumes the facts are true.

Petitioner is a forty-year-old Nicaraguan citizen. He is currently subject to removal proceedings. He is being detained without bond by Immigration and Customs Enforcement ("ICE") at the Aurora Contract Detention Facility located in Aurora, Colorado. *See* ECF No. 1 at 2-3.

Petitioner first entered the United States through Mexico in October 2022. The U.S. Customs and Border Protection ("CBP") apprehended him. ECF No. 1-1 at 31. He was paroled the next day. *Id* at 32. CBP directed him to report to ICE for further processing. In November 2023, over a year after entering the United States, Petitioner filed pro se an I-589, Application for Asylum and for Withholding of Removal, expressing a well-founded fear with a nexus to an expressed political opinion. ECF No. 1-1 at 11, 15-28. In December 2024, Petitioner reported to the Denver Enforcement and Removal Operations Denver Field Office ("EOIR"). At that time, the Department of Homeland Security ("DHS") issued a Notice to Appear, initiating removal proceedings against him. Petitioner was not detained at that time. ECF No. 7-1 at 3. An initial hearing before an Immigration Judge ("IJ") was set on the non-detained docket for July 25, 2025. *Id.*

On February 11, 2025, Petitioner was arrested for domestic violence. ICE issued a Form I-200, Warrant for Arrest of Alien and Form I-247 Immigration Detainer after learning of the arrest. On February 13, 2025, ICE took Petitioner into custody after he was released from jail. He is being detained under 8 U.S.C. § 1226(a), which provides "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Individuals detained under § 1226(a) are entitled to a bond hearing. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 526 (2021).

According to Petitioner, the domestic violence incident was a misunderstanding. He was in the process of asking his current wife for a divorce when she became "very angry and aggressive." ECF No. 1-1 at 11. He called the police. When the police arrived, what his wife told them was misinterpreted, and he was arrested in error. No criminal domestic violence charges were filed against him. ECF No. 1-1 at 88.

On March 3, 2025, Petitioner appeared before the IJ for his initial hearing. Petitioner did not request a bond hearing at that time. He requested time to consult with an attorney. On March 27, 2025, Petitioner requested a bond redetermination. On April 9, 2025, a bond hearing was set for April 21, 2025. Counsel represented Petitioner at the bond hearing. The IJ took testimony and received documentary evidence from both parties at the bond hearing. The IJ denied bond because Petitioner "did not establish [he was] not a flight risk." ECF No. 1-1 at 41.

On April 30, 2025, nine days later, Petitioner filed a motion for bond reconsideration, arguing two material changes in his circumstances. ECF No. 1-1 at 10.

3

The first material change was Petitioner being able to retrieve and provide his I-589. The second material change was a letter from his sponsor, a U.S. citizen, 17 years his senior, who wishes to marry him. On May 12, 2025, the IJ denied the motion, finding that the "Respondent has not established that circumstances have changed materially since the prior bond redetermination hearing such that he does not pose a flight risk." ECF No. 1-1 at 1.

On May 16, 2025, four days after the IJ denial for a bond redetermination, Petitioner filed his Application with this Court, asserting a Fifth Amendment procedural due process claim. Petitioner seeks "immediate[] release [] from immigration detention subject to a reasonable bond of $1500 and regular, routine conditions of release" or, in the alternative, "a constitutionally adequate bond hearing where all material evidence must be considered without arbitrary exclusion and the immigration court must issue written findings supported by the evidentiary record." ECF No. 1 at 19.

Petitioner simultaneously filed an appeal to the Board of Immigration Appeals ("BIA"); however, the appeal was not accepted until on or about May 30, 2025. ECF No. 7-1 at 27. On June 2, 2025, the IJ issued a Bond Memorandum of the Immigration Judge ("Bond Memorandum") setting out his reasoning for denying Petitioner bond. ECF No. 7-1 at 15. A final merits hearing on Petitioner's application for asylum and for withholding of removal is scheduled for September 17, 2025.

Respondents contend that the Application should be dismissed for lack of jurisdiction over the IJ's bond decisions and because Petitioner failed to exhaust available remedies before seeking a writ of habeas corpus. They also argue the Petitioner's Fifth

4

Amendment due process challenge is moot with the issuance of the IJ's Bond Memorandum and that Petitioner's arguments are meritless. ECF No. 7 at 5.

## II.  LEGAL STANDARD

### A.  Habeas Corpus Relief

Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The writ of habeas corpus is designed to challenge "the fact or duration" of a person's confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). "In other words, habeas corpus, and thus § 2241, offers detainees release from custody when the very fact that they are detained, or detained for a certain length of time, is unlawful." *Codner v. Choate*, No. 20-cv-01050-PAB, 2020 WL 2769938, at *4 (D. Colo. May 27, 2020).

### B.  Preliminary injunction

To succeed on a motion for a preliminary injunction, the moving party must show (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the movant's favor; and (4) the injunction is in the public interest. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010); *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quotations and citation omitted). Granting such "drastic

5

relief," *United States ex rel. Citizen Band Potawatomi Indian Tribe v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888-89 (10th Cir. 1989), is the "exception rather than the rule." *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984).

Certain types of preliminary injunctions, such as injunctions that alter the status quo or injunctions that require the nonmoving party to take some affirmative action, "are disfavored." *State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 883 (10th Cir. 2021). To obtain a "disfavored" injunction, the moving party must "make a heightened showing of the four factors." *RoDa Drilling*, 552 F.3d at 1209; *Colorado v. Griswold*, 99 F.4th 1234, 1240 n.4 (10th Cir. 2024).

Petitioner seeks an injunction that alters the status quo. Namely, Petitioner seeks release from detention. Therefore, Petitioner's motion falls under the heightened standard for preliminary injunctions.

### C. Pre-removal Detention Under § 1226(a)

Before addressing the jurisdictional and failure to exhaust arguments, the Court finds it helpful to provide an overview of the statutory law regarding the detention of noncitizens. Two sections of the Immigration and Nationalization Act authorize detention—8 U.S.C. § 1231, which applies once a removal order has been issued, and 8 U.S.C. § 1226, which operates when a removal order has not yet been entered. Detention is mandatory under 8 U.S.C. § 1231(a), and it may also be mandatory when certain crimes are involved under 8 U.S.C. § 1226(c). If a noncitizen is in removal proceedings and 8 U.S.C. § 1226(c) does not apply, DHS makes the initial decision to detain a noncitizen under 8 U.S.C. § 1226(a). The noncitizen may request a custody

redetermination hearing from an IJ at any time before a removal order becomes final. 8 C.F.R. § 236.1(d)(1). That bond decision is appealable to the BIA. 8 C.F.R. § 1003.19(f). Detainees are allowed to seek an additional bond hearing before an IJ whenever they experience a material change in circumstances. 8 C.F.R. § 1003.19(e).

Here, Petitioner brings an as-applied challenge to § 1226(a) procedures. ECF No. 1 at 8. When considering due process challenges to § 1226(a), like the one here, this Court has applied the framework established in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See L.G. v. Choate*, 744 F. Supp. 3d 1172, 1182 (D. Colo. 2024).

The three-factor balancing test from *Mathews* considers: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

### III.   ANALYSIS

#### A.   Jurisdiction and Exhaustion

The Court first addresses the government's argument that this Court lacks subject matter jurisdiction over the Petitioner's Application. Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). District courts have "jurisdiction under 28 U.S.C. § 2241 to consider any error in [Petitioner's] agency proceedings, including any claimed due process violation." *Rodriguez Diaz v.*

*Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022). District courts lack jurisdiction to review an IJ's bond determination. *See* 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review.").

Here, the Petitioner claims he "is not attempting to hide a challenge to a discretionary decision within a due process claim," but he does ask that the Court order his release from custody on bond. ECF No. 1 at 2, 5. Such an order would overrule the decision of the IJ that Petitioner should remain in custody because he could not demonstrate that he was not a flight risk. The Tenth Circuit has confirmed that "to the extent [the petitioner] challenges the agency's discretionary bond decision . . . the court lack[s] jurisdiction" under § 1226(e). *Mwangi v. Terry*, 465 F. App'x 784, 787 (10th Cir. 2012) (unpublished) (noting that § 1226(e) prohibits judicial review of bond decisions); *Pelletier v. United States*, 653 F. App'x 618, 622 (10th Cir. 2016) (unpublished) (same). To the extent Petitioner is challenging the IJ's discretionary decision concerning the grant or denial of a bond, that is not reviewable by this Court. To the extent petitioner's claims challenge his detention as unconstitutional and challenge the validity of the process which led to his being detained without bond, the Court has subject matter jurisdiction under 28 U.S.C. § 2241 to consider Petitioner's constitutional claim. *See Demore v. Kim*, 538 U.S. 510, 517 (2003).

Next, the Court addresses the government's argument that the Court should dismiss this matter without prejudice to allow the Petitioner to exhaust his administrative remedies by waiting for the BIA's decision on his appeal. ECF No. 7 at 10 (citing *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010)). While petitioners are ordinarily required

8

to exhaust their administrative remedies before seeking a writ under 28 U.S.C. § 2241, *Garza* acknowledges that § 2241 contains no clear statement requiring exhaustion before filing a federal habeas petition. 28 U.S.C. § 2241; *Garza*, 596 F.3d at 1203. In contrast, 8 U.S.C. § 1252(d)(1) requires exhaustion when a noncitizen seeks to challenge an order of removal in court, even if there are constitutional objections. 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if—the alien has exhausted all administrative remedies available to the alien as of right."). Respondents cite to *Soberanes v. Comfort*, 388 F.3d 1305, 1309 (10th Cir. 2004), for support that exhaustion applies not only to substantive issues but also to constitutional issues. ECF No. 7 at 10. In *Soberanes*, the Tenth Circuit held that the failure to appeal a final removal order to the BIA barred judicial review under 8 U.S.C. § 1252(d)(1) not only of substantive issues but also constitutional due process objections. 388 F.3d at 1309. 8 U.S.C. § 1252(d)(1) does not apply here because Petitioner is not challenging a final removal order, and § 1252(d)(1) does not cover bond determinations. This Court has previously held that "[w]hen Congress does not require exhaustion in the statute then the district court has discretion to decide if administrative exhaustion is required." *L.G.*, 744 F. Supp. 3d at 1181. "A narrow exception to the exhaustion requirement applies if a petitioner can demonstrate that exhaustion is futile." *Garza*, 596 F.3d at 1203. Petitioner argues that exhaustion at the BIA level has become futile. The Court is not wholly convinced this is true.

Petitioner argues he is not required to exhaust his administrative remedies because exhaustion is not required when challenging the constitutionality of underlying

detention, when there is no effective remedy to exhaust, and because the BIA cannot rule on constitutional claims. *See* ECF No. 6-9. For support, Petitioner cites to this Court's decision in *L.G*. In *L.G.*, in an as-applied § 1226(a) challenge, the Court found that an appeal to the BIA would be futile because the BIA's prior decisions concerning detention under § 1226(a) required the noncitizen to carry the burden that he is not a flight risk and not a danger to the community. 744 F. Supp. 3d at 1182. As Respondents point out, the facts here are distinguishable from L.G. L.G. was detained for over 30 months—14 months under 8 U.S.C. § 1231 and an additional 16 months under § 1226(a) after the initial bond hearing. Here, Petitioner has been detained under § 1226(a) for six months since his initial detention and for four months since his initial bond hearing. Additionally, DHS did not file any documents into the record at L.G.'s bond hearing. *Id.* at 1177. Here, Petitioner does not challenge Respondents' assertion that the "IJ took testimony and received documentary evidence from both parties" at the bond hearing. ECF No. 7-1 at 5. In *L.G.*, this Court held that *L.G.*, a noncitizen facing prolonged detention, was entitled to a bond hearing where the burden was shifted to the Government to show, by clear and convincing evidence, that continued detention was justified. *See* 744 F. Supp. 3d at 1184. While Petitioner challenges the burden that was applicable in his bond hearing, he raises it for the first time in his Reply. *See* ECF No. 11 at 3. That is too late, and the argument is therefore waived. *See United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011) ("[A]rguments raised for the first time in a reply brief are generally deemed waived."). Additionally, as discussed more fully below, the Court does not find that Petitioners' detention has been prolonged, requiring a burden shift to the Government.

Courts in this District have found administrative exhaustion futile when a petitioner challenges the constitutionality of his or her detention under 8 § 1226(c). *See, e.g.*, *Martinez v. Ceja*, 760 F. Supp. 3d 1188, 1192 (D. Colo. 2024). Section 1226(c) allows the government to detain certain individuals who are not citizens of the United States without a bond hearing during removal proceedings. 8 § 1226(c). When a petitioner brings a challenge to their detention under § 1226(c), they are challenging the constitutionality of the statute itself. *See id.* ("Immigration officials have previously ruled that they lack authority to hear constitutional challenges to statutes."). Courts in this district, like this Court in L.G., have excused exhaustion when the petitioner's detention was so prolonged without an adequate bond hearing that it justified not requiring exhaustion. 744 F. Supp. 3d at 1182; *see also Martinez,* 760 F. Supp. 3d at 1192 (excusing exhaustion when petitioner was detained for over 21 months under 8 § 1226(c)); *de Zarate v. Choate*, No. 23-CV-00571-PAB, 2023 WL 2574370, at *2 (D. Colo. Mar. 20, 2023) (excusing exhaustion when petitioner was detained for over 14 months under 8 § 1226(c)). Here, Petitioner is not challenging the constitutionality of 8 § 1226(a), but rather the constitutionality of the procedures used for his bond hearing determinations. Nor has Petitioner's detention been so prolonged without any type of process to present constitutional issues.

The purpose of requiring exhaustion is "to avoid premature interference with agency processes, to give the agency the opportunity to correct its own errors . . . ." *Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010) (citing *Weinberger v. Salfi,* 422 U.S. 749, 765 (1975)). Here, the BIA has not had the opportunity to address

any procedural errors in the IJ's determination. This Court is not convinced that waiting for the result of Petitioner's appeal to the BIA would be futile, in part, because it is not predetermined how the BIA is likely to rule. But even if the Court were to find exhaustion was unnecessary here, application of the Matthews factors results in the same outcome—denial.

### B.   *Mathews* Factors

Tenth Circuit precedent demonstrates that the *Mathews* test is appropriate when determining what process is constitutionally due. *See Marin v. King*, 720 F. App'x 923, 940-41 (10th Cir. 2018); *see also J.B. v. Washington Cnty.*, 127 F.3d 919, 924-925 (10th Cir. 1997) ("To determine what process is constitutionally due, we look to three somewhat flexible demands of procedural due process [listing the Mathews factors.]"). Here, the inquiry is whether the IJ was required to issue more robust written findings contemporaneous with its order denying Petitioner's bond or when denying Petitioner's motion for bond reconsideration under 8 C.F.R. § 1003.19(e) to comport with the Due Process Clause of the Fifth Amendment.

### 1.   Private Interest

First, the Court considers "the private interest that will be affected by the official action." *Mathews*, 424 U.S. at 321. The private interest at stake here is freedom from detention. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (citing *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982)). Petitioner has been detained for over five months under conditions another court

in this District has recognized as "more akin to incarceration than civil confinement." *Daley v. Choate*, No. 22-CV-03043-RM, 2023 WL 2336052, at *4 (D. Colo. Jan. 6, 2023).

In *L.G.,* this Court recognized that the longer the duration of detention, the greater the deprivation of a noncitizen's private interest. *L.G.,* 744 F. Supp. 3d at 1182 (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 854 (2d Cir. 2020)). The Court also recognized that the liberty interest of a noncitizen detained under § 1226(a) may be less than a noncitizen facing an indefinite and prolonged detention under § 1226(c) or § 1231. *See id.* Neither the Supreme Court nor the Tenth Circuit has specified when detention of a noncitizen becomes so prolonged as to violate due process. In *Zadvydas*, the U.S. Supreme Court held that the due process clause prohibits the government from detaining immigrants indefinitely. 533 U.S. 678, 689 (2001). Rather, "in light of the Constitution's demands," a noncitizen may be detained only for "a period reasonably necessary to bring about that [noncitizen's] removal from the United States." *Id.*; *accord Johnson v. Arteaga-Martinez*, 596 U.S. 573, 580 (2022). According to the *Zadvydas* Court, in the post-removal context, the period reasonably necessary to effect the noncitizen's removal is presumptively six months. *Zadvydas*, 533 U.S. at 701; *see Arteaga-Martinez*, 596 U.S. at 586 (Breyer, J., concurring). However, this presumption does not trigger a per se release of every noncitizen at the six-month mark — "[t]o the contrary, [a noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Petitioner here has not yet been detained for the presumptive six months since his bond determination. Two courts in this District, including this one, have issued the relief that Petitioner seeks

here, a bond redetermination hearing where the petitioner is being held under 8 U.S.C. § 1226(a), but in each of those cases, the petitioner had been detained more than four times the presumptive period. *See L.G.*, 744 F. Supp. 3d at 1183 (petitioner detained over 30 months); *Diaz-Ceja v. McAleenan*, No. 19-CV-00824-NYW, 2019 WL 2774211, at *10, *11 (D. Colo. July 2, 2019) (petitioner detained over 27 months). The Court finds that Petitioner's detention has not been prolonged as of the filing of this Application. Therefore, the court concludes that the first *Mathews* factor weighs in Respondents' favor.

### 2.   Deprivation of Interest Through the Procedures Used

Second, the Court considers "the risk of an erroneous deprivation of such [private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Petitioner argues that he is entitled to a "reasoned decision" as to why the IJ denied his bond and his bond redetermination. ECF No. 1 at 13. The only reason provided contemporaneous with the bond denial was that Petitioner "did not establish [he was] not a flight risk." ECF No. 7-1 at 9. It was not until after Petitioner filed his Application and appealed the denial to the BIA that he received a written decision from the IJ. ECF No. 7-1 at 15. Respondents argue that Petitioner's Fifth Amendment claim challenging the written reasoning for his bond denial is moot with the issuance of the Bond Memorandum on June 2, 2025. In his reply, Petitioner argues that he perfected his appeal on May 29, 2025, so he did not have a "meaningful opportunity to respond or supplement the record in the trial forum." ECF No. 11 at 5. However, the Court notes Petitioner did have an opportunity to file a brief with the BIA after the Bond Memorandum was issued to address any concerns regarding the IJ's

14

bond determination. ECF No. 7-1 at 19 ("Appealing party is granted until 6/25/2025 to submit a brief to the Board of Immigration Appeals."). Therefore, Petitioner's concerns and evidence will be reviewed by a neutral adjudicator on appeal.

Petitioner also argues that the IJ's denial of Petitioner's bond redetermination under 8 C.F.R. § 1003.19(e) violated due process under the *Accardi* Doctrine. 8 C.F.R. § 1003.19(e) states that a noncitizen's request for a subsequent bond redetermination "shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination." In *Accardi*, the Supreme Court held that administrative agencies in the Federal Government are obliged to follow their regulations, policies, and procedures. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954). The Court does not find Petitioner's argument convincing that the IJ was "obligated to review and evaluate [the] additional evidence." ECF No. 1 at 17. Petitioner filed for a bond reconsideration under 8 C.F.R. § 1003.19(e) nine days after his initial bond denial. ECF No. 1-1 at 13. Petitioner claimed there were two material changes in Petitioner's circumstances: 1) his I-589, Application for Asylum and for Withholding of Removal paperwork dated November 13, 2023, and 2) a letter from his sponsor, a U.S. citizen who wishes to marry him. It is not clear how these two pieces of evidence demonstrate a material change in circumstances. Arguably, the I-589 would have been part of the Government's record at the April 21, 2025, bond hearing. Petitioner's counsel could have raised the pending I-589 application at the hearing. It is unknown whether counsel did raise it as evidence that Petitioner was not a flight risk, but a I-589 application that has been pending for 17 months is not a material change in

circumstances. And by Petitioner's admission, evidence that he was seeking a divorce from his current wife so that he could marry his sponsor was presented at the April 21, 2025, bond hearing because it is this conversation with his current wife that led to Petitioner's domestic violence arrest. ECF No. 1-1 at 11-12. It is not clear to this Court how the IJ violated regulations when it determined that "Respondent has not established that circumstances have changed materially since the prior bond redetermination hearing such that he does not pose a flight risk" when denying Petitioner a new hearing. ECF No. 1-1 at 1. It does not appear that any of the circumstances on which the IJ based its decision have materially changed; it simply appears that Petitioner would like to present additional evidence that was available at the time of the initial bond hearing.

Petitioner had the right to appeal to the BIA, and he did so. Nothing prevents Petitioner from seeking further bond redeterminations based on materially changed circumstances that might arise in the future throughout his detention. In *L.G.*, this Court noted that "as the period of . . . confinement grows, so do the required procedural protections no matter what level of due process may have been sufficient at the moment of initial detention." 744 F. Supp. 3d at 1184 (internal quotations and citations omitted). As discussed above, this case is distinguishable from *L.G.* because here Petitioner's detention has not been prolonged. Therefore, in this case, Petitioner has not demonstrated that the procedural protections afforded Petitioner were inadequate or that any additional procedural safeguards are necessary. Accordingly, the second *Mathews* factor weighs in Respondents' favor.

### 3. Government/Public Interest and Administrative Burden

Third, the Court considers "the [g]overnment's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Mathews*, 424 U.S. at 321. The final factor also requires an assessment of the "public interest." *Id.* at 347. It is undisputed that the government has an interest in ensuring removable noncitizens appear for their scheduled removal proceedings and an interest in protecting the community. *See Zadvydas*, 533 U.S. at 690. It would stand to reason that if a noncitizen were neither a flight risk nor dangerous, there would be no government or public interest in detention. There is nothing in the record that indicates the IJ found that Petitioner would be a risk to the community, so the focus of this inquiry will be the potential for flight if Petitioner is granted bond.

In *Demore*, the Supreme Court specifically recognized Congress's determination "that permitting discretionary release of aliens pending their removal hearings would lead to large numbers of deportable criminal aliens skipping their hearings and remaining at large in the United States unlawfully." 538 U.S. at 528. More recently, the Supreme Court recognized that "[a]liens who have not been ordered removed are less likely to abscond because they have a chance of being found admissible." *Johnson*, 594 U.S. at 524. Petitioner's final removal hearing is scheduled for September 17, 2025. Petitioner points out that non-detained noncitizens' chances of being granted asylum are greater than detained noncitizens. ECF No. 11 at 5 n.2. However, the Government has a significant interest in ensuring Petitioner is present for the September 17, 2025 hearing, and if he is ordered removed, "detention . . . increase[es] the chance that [] the aliens will be

17

successfully removed." *Demore*, 538 U.S. at 528. In *L.G.*, this Court recognized that the "Government's interest may have outweighed short-term deprivation of petitioner's liberty interests, [but] that [the] balance shifted once [L.G.'s] imprisonment became unduly prolonged." 744 F. Supp. 3d at 1185 (quotation and citation omitted). Once again, the Court does not find that Petitioner's detention has become unduly prolonged. As such, the third factor of the three-factor *Mathews* test weighs in Respondents' favor. Given that none of the *Mathews* factors weigh in Petitioner's favor, the Court finds that the procedures used in Petitioner's case were constitutionally adequate.

### C. Motion for Preliminary Injunction

Next, the Court addresses Petitioner's motion for preliminary injunction. The Court first addresses Petitioner's likelihood of success on the merits. Because Petitioner seeks a disfavored injunction, he must make a "heightened showing" on this factor. *RoDa Drilling*, 552 F.3d at 1208. The Court finds that Petitioner has not demonstrated a likelihood of success on the merits because the Court has already determined that the claims within the Application do not state a violation of constitutional or federal rights. Because petitioners have failed to demonstrate a likelihood of success on the merits, the Court does not address the remaining elements for a preliminary injunction. See *Winter*, 555 U.S. 7 at 23-24 (holding that "[a] proper consideration" of the balance of equities and public interest "alone requires denial of the requested injunctive relief" and, therefore, declining to address the likelihood of success on the merits); *see also Big O Tires, LLC v. Felix Bros., Inc.*, 724 F. Supp. 2d 1107, 1121 (D. Colo. 2010) (declining to address every factor because "the resolution of them will have no bearing on the outcome").

## IV.　CONCLUSION

For the reasons stated above, the Court concludes that Petitioner has not shown that he is detained in violation of the Constitution or in violation of federal law and thus has not shown that relief is warranted under 28 U.S.C. § 2241 or that he should be granted preliminary injunctive relief mandating his immediate release from detention. Therefore, the Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, ECF No. 1, and the Motion for a Preliminary Injunction, ECF No. 12, are DENIED. It is ordered that Petitioner's Application for Writ of Habeas Corpus, ECF No. 1, is DISMISSED. It is further ordered that this case is CLOSED.

DATED: August 12, 2025

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge